UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MORTEZA KATEBIAN a/k/a
Ben Katebian,

      Plaintiffs,

vs

ARASH MISSAGHI a/k/a Ara Missaghi,
LAILA ALIZADEH, TROY WILSON,
SKYMARK PROPERTIES SPE, LLC,
a Delaware limited liability company,
SKYMARK PROPERTIES II, LLC,
a Michigan limited liability company,
SKYMARK PROPERTIES III, LLC,
a Michigan limited liability company,
SKYMARK PROPERTIES CORPORATION,
a Delaware corporation, and
LIBERTY & YORK CORPORATION,
a Delaware corporation

      Defendants.

Case No. 18-cv-13379
Hon. Sean F. Cox
Mag. Judge David R. Grand

_____

**PLAINTIFF'S *CORRECTED* BRIEF: (A) IN RESPONSE TO ORDER
TO SHOW CAUSE [DOCKET NO. 105]; AND (B) IN OPPOSITION TO
<u>DEFENDANTS' MOTION TO DISMISS [DOCKET NO. 106]</u>**

## <u>COUNTER-STATEMENT OF ISSUES PRESENTED</u>

I.

Should the Court dismiss this action due to a lack of subject matter jurisdiction based on diversity of citizenship among the Parties?

Plaintiff answers: "No."

Defendants answer: "Yes."

# **CONTROLLING OR MOST PERSUASIVE AUTHORITIES**

**FEDERAL STATUTES**

28 U.S.C. §1332

28 U.S.C. §1927

**FEDERAL CASES**

*Davis v. Wakelee*, 156 U.S. 680, 689 (1895)

*Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428 (1991)

*New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001)

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90 (1938)

*Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922)

*Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011)

*Lewis v. Weyerhaeuser Co*., 141 Fed. Appx. 420, 424 (6th Cir. 2005)

*Singh v. Daimler-Benz AG,* 9 F.3d 303 (3d Cir. 1993)

*Herrera v. Sanchez,* Case No. 15-cv-12862, 2015 W.L. 8311845 (E.D. Mich. December 9, 2015) (Exhibit 24)

*Fleming v. Fed Ex Freight East, Inc.,* Case No. 06-cv-112275, 2006 W.L. 2038618 (E.D. Mich. June 23, 2006) (Exhibit 25)

*Green v. Liberty Ins. Corp.*, 220 F. Supp. 3d 842, 847–848 (E.D. Mich. 2016)

*Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986)

*Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006)

*Haynie v. Ross Gear Div. of TRW, Inc.*, 799 F.2d 237, 243 (6th Cir. 1986)

*Shepard v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2003)

*Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)

*Shepard v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2003)

*Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997)

*Bar's Prod., Inc. v. Bars Prod. Int'l, Ltd.*, Case No. 10-14321, 2014 WL 12689936, at *5 (E.D. Mich. Sept. 19, 2014)

*Bar's Prod., Inc. v. Bar's Prod. Int'l, Ltd.*, Case No. 10-14321, 2015 WL 5693661 (E.D. Mich. Sept. 29, 2015)

*Geller v. American Ins. Co.*, 2014 WL 920740 (E.D. Mich. March 10, 2014)

*Trustees of Laborers, Local 310 Pension Fund v. Able Contracting Group, Inc.*, 2007 WL 184748, at *3 (N.D. Ohio Jan. 19, 2007)

## INTRODUCTION

Plaintiff Morteza Katebian, by his attorneys, submits this Brief: (A) In response to Order to Show Cause [Docket No. 105]; and (B) In Opposition to Defendants' Motion to Dismiss [Docket No. 106], hereafter Plaintiff's "**BRIEF**."[1] During the Court's final pre-trial conference, held on January 5, 2021, and for the very first time, Defendants argued that the Court lacks subject matter jurisdiction over this matter (the "**MEMBER LITIGATION**"), because there is a lack of complete diversity of citizenship among the Parties. Specifically, Defendants allege (for the very first time) that:

> ➢ All of the Defendants (including the corporations and limited liability companies organized in Michigan and Delaware) are foreign citizens, i.e. not citizens of the United States; and

> ➢ Plaintiff is a citizen of Canada and Iran, but not of the United States.

On that flawed basis, Defendants argue that there can be no subject matter jurisdiction on the basis of diversity of citizenship, because all of the Parties are foreign citizens.  Defendants make this contention, despite that no such claim had ever been previously alleged in the Member Litigation, the RICO Action or any other of the myriad actions among one or more of these parties, and despite that the following material facts are not (and have not been since October 29, 2018) genuinely disputed:

---

[1] Contrary To Defendants' unsubstantiated contentions, Plaintiff is, in fact, back in the United States and not "hiding" in Iran as alleged.

- ➢ Plaintiff is, and on October 29, 2018 (the "**FILING DATE**"), was, a permanent resident of the United States, domiciled in the State of California, because Plaintiff holds a U.S. Green Card and a U.S. entry permit, and therefore, is considered to be a permanent resident of the United States and a citizen of whatever State he was domiciled in as of the Filing Date;

- ➢ As of the Filing Date, Plaintiff was domiciled at 20 Via Loma, Laguna Niguel, California 92677;

- ➢ Defendants Skymark Properties SPE, LLC ("**SPE**"), Skymark Properties II, LLC ("**SKYMARK II**,") and Skymark Properties III, LLC ("**SKYMARK III**,") are, by Defendants' own admission, domestic limited liability companies (i.e., organized in Michigan and Delaware), and each is a citizen of the State of Michigan or Georgia for purposes of diversity of citizenship;[2]

- ➢ As of the Filing Date, there was (and is) complete diversity of citizenship among the Parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.[3]

Defendants' eleventh-hour assertion of a lack of subject matter jurisdiction is predicated on several key false assumptions, but also on purposeful omissions of evidence to the contrary, and it is wholly inconsistent with the positions taken by these Defendants in this Member Litigation and in other litigation. Indeed, Defendants' contention that this Member Litigation involves only foreign litigants is simply false.

---

[2] *See, e.g.,* Member Litigation Docket No. 32 at ¶¶7-11.

[3] *See, e.g.,* Member Litigation Docket No. 32 at ¶10.

## <u>PROCEDURAL HISTORY</u>

Plaintiff filed his Complaint on October 29, 2018 (the "**FILING DATE**"), and

Defendants filed the following in response:

- ➢ Motion to Dismiss and for Summary Judgment, filed on November 30, 2018 ["**MOTION NO. 1**," Docket No. 11];

- ➢ Supplemental Brief re: Motion to Dismiss and for Summary Judgment on February 12, 209 ["**SUPPLEMENTAL BRIEF**," Docket No. 29];

- ➢ Answer and Affirmative Defenses, filed on April 22, 2019 [the "**ANSWER**," Docket No. 32];

- ➢ Emergency Motion to Dismiss and/or for Other Sanctions, filed on October 2, 2019 ["**MOTION NO. 2**," Docket No. 64 (stricken by the Court)];

- ➢ Motion for Summary Judgment and/or for Dismissal as a Discovery Sanction, filed on November 19, 2019 ["**MOTION NO. 3**," Docket No. 73];

- ➢ Motion for Leave to File Motion for Judgment on the Pleadings, filed on December 2, 2020 ["**MOTION NO. 4**," Docket No. 96];[4]

- ➢ Renewed Motion for Summary Judgment by All Defendants. Attempted to be filed on December 2, 2020 ["**MOTION NO. 5**," Docket No. 97]

Notably, Defendants never once mentioned a lack of subject matter jurisdiction

based on diversity of citizenship in their Answer or in Motion Nos. 1 – 5; instead.

Defendants *first* raised the issue during the Zoom video hearing on the Parties'

Joint Final Pre-Trial Conference on January 5, 2021.  Defendants raised the issue,

---

[4] The Court denied Defendants' Motion No. 4, and therefore, Motion No. 5, via text-only order dated December 17, 2020.

despite that the professed basis was clearly a typographical error in a draft document, i.e. an allegation that Plaintiff was a resident of Canada and not of the State of California, which was contained in one of Plaintiff's sections of the proposed *Draft* Joint Final Pre-Trial Order – a document that was clearly designated to Defendants and to the Court as being a *Draft*.

Immediately following the Final Pre-Trial Conference, therefore, the Court – as it must - entered its Order, requiring the Parties to submit briefs to demonstrate whether or not the Member Litigation should be dismissed for a lack of subject matter jurisdiction. Pursuant to the Order, Defendants' brief was due by February 5, 2021, but in lieu of a response, Defendants filed their sixth (6th) Motion to Dismiss [Defendants' "**MOTION NO. 6**," Docket No. 106]. Plaintiff's response to the Order (and Defendants' Motion No. 6) is due by February 19, 2021, and therefore, Plaintiff files this BRIEF in response to the Order and in opposition to Defendants' Motion No. 6.

In his Brief, Plaintiff rightfully argues that Defendants' eleventh-hour assertion of a lack of subject matter jurisdiction is predicated on patently false assumptions and purposeful misstatements and omissions of the evidentiary record. Similarly, Defendants' contention of a lack of diversity of citizenship among the Parties is wholly inconsistent with the positions taken by these Defendants in the Member Litigation and in myriad other litigation. For example, these Defendants admit in

their Answer that Plaintiff is a *citizen* of the State of California for purposes of diversity of citizenship. *See* Exhibit 22 at ¶¶1 & 7-11.

### SUMMARY OF PLAINTIFF'S RESPONSE AND OPPOSITION

Plaintiff should be deemed to have satisfied his burden in response to the Court's Order to Show Cause, and Defendants' Motion to Dismiss should be denied, because, among other reasons,[5] the following material facts are admitted by the Parties, are not genuinely disputed and demonstrate that, as of the Filing Date, there was complete diversity among the Parties:

➢ Plaintiff holds (and, as of the Filing Date, held) a U.S. "**GREEN CARD**" (or **PERMANENT RESIDENT** card), a U.S. Entry Permit and a U.S. Social Security Number (XXX-XX-5158), all of which were relied upon by Defendants to help secure the loans on the Southfield property and the Georgia property from Extensia Financial LLC and from Green Lake, and therefore, Plaintiff is presumed to be a permanent resident alien of the U.S.;

➢ As of the Filing Date, and after, Plaintiff was domiciled at 20 Via Loma, in Laguna Niguel, California, a fact long known to Defendants and relied on by them to secure the loans from Greenlake and Extensia;

➢ In addition to his Green Card, Plaintiff holds (and held as of the Filing Date) a California Driver's license;

➢ The plethora of competent, admissible evidence, demonstrating that Plaintiff resided at 20 Via Loma, Laguna Niguel, California as of the Filing Date;

➢ Defendants relied on Plaintiff's status as a permanent resident of the U.S., who was domiciled in the State of California and held a U.S. Social Security

---

[5] Due to volume of evidence relied on by Plaintiff, the items referred to in this list are intended merely as demonstrative examples.

Number, to help secure over $20 Million in loans on the Southfield Property and the Morrow Property from Greenlake and Extensia, respectively;

➢ Defendants repeatedly represented that Plaintiff was a permanent resident of the U.S., who was domiciled in the State of California, to prospective lenders, including Greenlake and Extensia;

➢ In their responsive pleadings in this action and in pleadings these same Parties filed as plaintiffs in the RICO Action,[6] Defendants admit that Plaintiff is and, as of the Filing Date, was a permanent resident of the U.S., domiciled in the State of California and held a U.S. social security number;

➢ Defendants admit that SPE, Skymark II and Skymark III are (and were) each citizens of the State of Michigan (or Georgia) as of the Filing Date for purposes of diversity of citizenship;[7]

➢ Defendants admit that this Court has subject matter jurisdiction over this dispute under 28 U.S.C. §1332, as there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000;[8]

➢ Defendants admit that venue is proper under 28 U.S.C. §1391(b)(2) as a substantial part of the events giving rise to the claims pled occurred in this district;[9] and

➢ In the **RICO ACTION,** these Defendants (acting as Plaintiffs), affirmatively allege that Morteza Katebian, "was a resident of [Laguna Niguel] California and had a green card."[10]

For the foregoing reasons, together with those additional bases stated below in this Brief, Defendants' Motion to Dismiss should be denied, and Plaintiff has met

---

[6] Case No. 2020-cv-12372, hereafter the "**RICO ACTION.**"

[7] *See, e.g.,* Member Litigation Docket No. 32 at ¶¶7-11.

[8] *See, e.g.* Member Litigation Docket No. 32 at ¶¶10 & 11.

[9] *See, e.g.* Member Litigation Docket No. 32 at ¶¶10 & 11.

[10] *See, e.g.* RICO Action Docket No. 1 at ¶¶2 & 16.

his burden of demonstrating cause why this Member Litigation should not be dismissed for a lack of subject matter jurisdiction.

## ARGUMENT

The general rule is that, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011) (*quoting Freeport–McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428 (1991); *accord St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289–90 (1938).  If subject matter jurisdiction exists at the time an action is commenced, however, such jurisdiction may not be divested by subsequent events.  *See Freeport-McMoRan, Inc. v. K N Energy, Inc., 498 U.S. 426, 428 (1991)*; *Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54, 43 S.Ct. 51, 53, 67 L.Ed. 124 (1922) ("Jurisdiction once acquired ... is not divested by a subsequent change in the citizenship of the parties. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties") (citations omitted). The relevant inquiry here, therefore, is whether subject matter jurisdiction based on diversity of citizenship existed as of October 29, 2018, i.e. the "FILING DATE."

## A. SUBJECT MATTER JURISDICTION BASED ON DIVERSITY OF CITIZENSHIP IS PRESENT.

As the following Exhibits reveal, Plaintiff is (and, as of the Filing Date, was) a citizen of the State of California for purpose of diversity of citizenship and subject matter jurisdiction:

1. United States Permanent Resident Card ("**GREEN CARD**"), showing Plaintiff was a resident of the United States since August 4, 2011, which card expires on September 7, 2021 (**EXHIBIT 1**);

2. United States Entry Permit, which expires on June 2, 2021 (**EXHIBIT 2**);

3. Stock Transfer Agreement (forming the predicate of Plaintiff's claims in this Member Litigation), showing Plaintiff's notice address to be (**EXHIBIT 3**):

   > Morteza Katebian
   > 20 Via Loma
   > Laguna Niguel, California 92677
   > (416) 857-6026

4. Trust Agreement (forming the predicate for Defendants' contention that Plaintiff no longer owns the Liberty & York Corp. stock), which is dated August 1, 2016, and indicates that it is entered between Defendant Alizadeh and Morteza Katebian *of City of Laguna Niguel, in the State of California* (**EXHIBIT 4**);

5. Copy of Plaintiff's Canadian passport, showing his travels in and out of the United States and other countries (**EXHIBIT 5**);

6. June 25, 2017 Application for membership in the American Consumer Counsel, showing Plaintiff's name and address as:  Morteza Katebian, 20 Via Loma, Laguna Niguel, California 92667, (416) 857-6026 (**EXHIBIT 6**);

7. Skymark Properties III, LLC's Official Form 206H, Schedule H, showing Plaintiff as a Co-Debtor and his name and address as: Morteza Katebian, 20 Via Loma, Laguna Niguel, California 92667-5148 (**EXHIBIT 7**);

8. Deposition of Plaintiff in this Member Litigation, showing Plaintiff's testimony that he "had the residency in U.S." and had been filing taxes in the United States as well (**EXHIBIT 8**);

9. Deposition of Troy Wilson, showing his testimony that Plaintiff had a "Green Card" and a U.S. Social Security Number (**EXHIBIT 9**);

10. California Certificate of Dissolution (filed February 24, 2017, but signed February 17, 2017), showing that Plaintiff – prior to February of 2017 – had a California business (**EXHIBIT 10**);

11. Letter from counsel for Extensia Financial, LLC to Plaintiff, directed to Plaintiff at 20 Via Loma, Laguna Niguel, California 92667 (**EXHIBIT 11**);

12. Extensia Loan Application, reflecting Morteza Katebian as Guarantor 1 at 20 Via Loma, Laguna Niguel, California 92667, (416) 857-6026, SSN XXX-XX-5158 (Exhibit **12**);

13. Notice of Acceleration, dated December 24, 2018, directed to Morteza Katebian at 20 Via Loma, Laguna Niguel, California 92667 (**EXHIBIT 13**);

14. 2018 IRS & State of California Forms 8879, filed by Morteza Katebian (**EXHIBIT 14**);

15. 2017 IRS & State of California Forms 8879, filed by Morteza Katebian (**EXHIBIT 15**);

16. January 25, 2017 Extensia Personal Financial Statement of Morteza Katebian, showing Plaintiff's address, SSN and telephone number as 20 Via Loma, Laguna Niguel, California 92667, (416) 857-6026, SSN XXX-XX-5158 (**Exhibit 16**);

17. Extensia Term Sheet ("Letter of Interest"), showing Plaintiff's address on the Credit Search Authorization form and the SSN release authorization as 20 Via Loma, Laguna Niguel, California 92667, (416) 857-6026, SSN XXX-XX-5158 (**EXHIBIT 17**);

18. Transcript of Trial Proceedings in the Skymark Properties III, LLC Chapter 11 proceedings, wherein Plaintiff testified that the Debtor "needed to have a Social Security Number to form a company and I am a resident of

California, so I put my name to the (*indiscernable*) of the company." (**Exhibit 18**);

19. Skymark Properties II, LLC's Official Form 206H, Schedule H, showing Plaintiff as a Co-Debtor and his name and address as: Morteza Katebian, 20 Via Loma, Laguna Niguel, California 92667, Guarantor (**Exhibit 19**);

20. June 5, 2019, email from Al Shad, CPA, advising Plaintiff he'd just filed his state and federal income tax returns (**Exhibit 20**);

21. California Driver's License of Morteza Katebian (D.L. No. B7896422) (**Exhibit 21**);

22. In their Answer to Complaint, Affirmative Defenses (Docket No. 32 in the Member Litigation), Defendants admitted the following (**Exhibit 22**):

   a. Katebian resides in, and is a permanent resident of, ***the State of California*** (¶1, emphasis added);

   b. Skymark II is a Michigan limited liability company the sole member of which is Skymark Corporation. ***For the purpose of diversity jurisdiction, Skymark II is a citizen of Michigan*** and Toronto (¶7, emphasis added);

   c. Skymark III is a Michigan limited liability company the sole member of which is Skymark Corporation. ***For the purpose of diversity jurisdiction, Skymark III is a citizen of Michigan*** and Toronto (¶8, emphasis added);

   d. Skymark SPE is a Delaware limited liability company the sole member of which is Skymark Corporation. ***For the purpose of diversity jurisdiction, Skymark SPE is a citizen of Michigan*** and Toronto (¶10, emphasis added);

   e. ***This Court has subject matter jurisdiction over this dispute*** under 28 U.S.C. 1332 as ***there is complete diversity between the parties*** and the amount in controversy, exclusive of interest and costs, exceeds $75,000 (¶10, emphasis added); and

f.  Venue is proper under 28 U.S.C. 1391(b)(2) as a substantial part of the events giving rise to the claims pled occurred in this district (¶11, emphasis added); and

g.  In their Complaint in the RICO Action, these Defendants (there acting as Plaintiffs) allege that this Plaintiff is, in fact, a permanent resident, domiciled in the State of California (Exhibit 23, ¶¶2, 16, 37, 41).

In their Motion to Dismiss, Defendants argue that: (a) Plaintiff is a citizen of Canada and Iran, but is not (and was not) domiciled in the State of California; and (b) Defendants are each citizens of Canada, and therefore, none serves as an entity domiciled in the United States for purpose of diversity of citizenship jurisdiction. Defendants are mistaken as to the citizenship of the Defendant LLC's and corporations. *See Fleming v. Fed Ex Freight East, Inc.,* Case No. 06-cv-112275, 2006 W.L. 2038618 (E.D. Mich. June 23, 2006) ("A corporation is considered to be a citizen of the state where it is incorporated and the state where is has its principal place of business.") (**EXHIBIT 25**). Defendants' assumptions are not only factually mistaken, they seek to purposefully mislead and avoid the myriad admissions they've made to suit their needs at the time. Indeed, the general rule is that, "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Metz v. Unizan Bank*, 649 F.3d 492, 501 (6th Cir. 2011) (citing *Freeport-McMoRan, Inc. v. KN Energy, Inc.,* 498 U.S. 426, 428 (1991)). If subject matter jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events. *See*

11

*Freeport-McMoRan, Inc., 498 U.S.* at *428;see also Wichita Railroad & Light Co. v. Public Util. Comm'n of Kansas,* 260 U.S. 48, 54 (1922) ("Jurisdiction once acquired ... is not divested by a subsequent change in the citizenship of the parties. Much less is such jurisdiction defeated by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties") (citations omitted); *c.f. Herrera v. Sanchez,* Case No. 15-cv-12862, 2015 W.L. 8311845 (E.D. Mich. December 9, 2015) (**EXHIBIT 24**).

The result here is simple: even if Plaintiff's residence and domicile changes after the filing date – which it did not – such a change does not divest this Court of subject matter jurisdiction. The relevant inquiry here, therefore, is whether or not subject matter jurisdiction based on diversity of citizenship existed as of the Filing Date, i.e. as of October 29, 2018. The answer to that question is simple: yes! More importantly, Defendants do not appear to truly contest that conclusion, focusing, instead, on post-Filing Date events. This is an action between a Plaintiff – a Canadian citizen, who also holds a Green Card, making him a permanent resident domiciled in the state of California as of the Filing Date – facts these Defendants do not appear to contest.

Similarly, Defendants are not all foreign citizens for purposes of diversity of citizenship. To the contrary - and as Defendants admit - Skymark II, Skymark III and Skymark SPE are each domestic limited liability companies, which are (and,

12

as of the filing date, were) domiciled in the State of Michigan (or Georgia) for purposes of diversity of citizenship.  *See* Exhibit 22, ¶¶1, 7-11.  While Defendants do not admit that Liberty & York Corp. and Skymark Corporation are citizens of the State of Michigan or Georgia, Liberty & York is a Delaware corporation, and Skymark Corporation is organized under the laws of the State of Michigan, and therefore, cannot be said to be foreign entities.

Defendants' prior admissions cannot be simply swept under the rug to suit their current needs.  Indeed, under the doctrine of judicial estoppel, Defendants may not now (at the eleventh (11th) hour), alter the citizenships of these Parties they've agreed are appropriate.  *See Green v. Liberty Ins. Corp.*, 220 F. Supp. 3d 842, 847–848 (E.D. Mich. 2016). Judicial estoppel is an equitable doctrine meant to "protect the integrity of the judicial process...by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Id. citing New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001) (internal quotation marks and citations omitted). The doctrine holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position he may not thereafter, simply because his interests have changed, assume a contrary position[.]" *Id.* at 749 (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

The Sixth Circuit has described judicial estoppel "as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or

hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co*., 141 Fed.

Appx. 420, 424 (6th Cir. 2005). This court has applied judicial estoppel to similar

circumstances. *E.g., Geller v. American Ins. Co*., 2014 WL 920740 (E.D. Mich.

March 10, 2014) (Cleland, J.).

The fundamental – and immutable - facts are:

- ➢ Plaintiff was a permanent resident alien and citizen of the State of California for purposes of Diversity of Citizenship as of the Filing Date;

- ➢ Defendant Skymark II is (and, as of the Filing Date, was) a Michigan limited liability company and a citizen of Michigan;

- ➢ Defendant Skymark III is (and was as of the Filing Date) a Michigan limited liability company and was a citizen of Michigan;

- ➢ Defendant Skymark SPE is (and was as of the Filing Date) a Michigan limited liability company and a citizen of Michigan; and

- ➢ As of the date of this Brief, Morteza Katebian has returned from his vacation, is in the United States and is no longer visiting Iran.

The answer to the most pressing question – why would these Defendants change

course at this eleventh (11th) hour is simple: Alizadeh's husband, Arash Missaghi,

who is the true owner, controller, manager, etc. of Alizadeh's vast business

holdings in the United States and Canada, explains Defendants' goals better than

one might expect. Indeed, Missaghi makes these goals clear, as the following two

(2) out of a host of threatening text messages and emails, reveal:

I saw the texts you sent to Layla. Listen to me very carefullky [sp?]
you delusional [sp?] piece of shit moron…I know you come from the

14

rise foels [sp?] of iran from a low lofe [sp?] family your ass.. And u have never 6 zeros in your life…if you ever talk big again or lie or insult my inteeligence again your life as you know it will be done. If u ever threaten me again mother fucker I will pack u back into your mothers womb so u becoema [sp?] reborn again. Waych [sp?] who u talk to. I will fuck you up just so u learn how to talk anmd [sp?] wjo [sp?] to talk to in what manner…go fuck yourself.

U have balls. Come to my office now. Come meet me. Show me what your made off [sp?] pussy.

Next time u talk like this I will rip your tongue out and ram it up Your ass!

Mr. Missaghi goes on to state:



These Defendants, acting under Missaghi's direction and control, have done precisely as Missaghi threatened:  they've started a "***new one***" each time one is "***almost over***" or whenever Defendants have received unfavorable rulings in this Court, Canada and Georgia. But Defendants' and Missaghi's use of this Court and others to prosecute their personal vendetta should not be permitted to continue.

The fact here is that subject matter jurisdiction based on diversity of citizenship among the Parties existed as the Filing Date. *See Singh v. Daimler-Benz AG,* 9 F.3d 303 (3d Cir. 1993);   Defendants' citation to testimony of Plaintiff in other matters does not alter this conclusion.   Indeed, Defendants cite no evidence wherein Plaintiff says anything more than owning properties and businesses in Canada – but that is a far cry from testifying that Plaintiff did not *permanently* reside at 20 Via Loma, Laguna Niguel, California as of the Filing Date.

This is an action between a permanent resident domiciled in the state of California as of the filing date, and Liberty & York and each of the Skymark Defendants are citizens of Michigan for purposes of diversity of citizenship (*see* Complaint at ¶¶7-10; Answer at ¶¶7-10; s*ee Green v. Liberty Ins. Corp.*, 220 F. Supp. 3d 842, 847–848 (E.D. Mich. 2016).

Judicial estoppel is an equitable doctrine meant to "protect the integrity of the judicial process...by *prohibiting parties from deliberately changing positions according to the exigencies of the moment*."  *Id. citing New Hampshire v. Maine*, 532 U.S. 742, 749–750 (2001) (internal quotation marks and citations omitted). The doctrine holds that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position he may not thereafter, simply because his interests have changed, assume a contrary position[.]" *Id.* at

749 (*quoting Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). Courts looks to several factors in determining whether judicial estoppel is appropriate:

**First**, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would 'create the perception that either the first or the second court was misled[.]' Absent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750–51 (internal citations omitted). The Sixth Circuit has described judicial estoppel "as a rule against playing fast and loose with the courts, blowing hot and cold as the occasion demands, or hav[ing] [one's] cake and eat[ing] it too." *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 424 (6th Cir. 2005). This court has applied judicial estoppel to similar circumstances. *E.g., Geller v. American Ins. Co.*, 2014 WL 920740 (E.D. Mich. March 10, 2014) (Cleland, J.). The plaintiff in Geller had allegedly been robbed of nearly $70,000 in jewelry and sued his insurer after it refused to pay his premium, citing "false statements" made in his claim. Id. at *1. The plaintiff stated his claim and in

deposition testimony that he had owned most of the jewelry since the 1990s. Id.
But the plaintiff had not declared the jewelry in his 2004 bankruptcy proceeding,
and in fact admitted to lying in the petition. Id. The court applied judicial estoppel
and granted summary judgment to the defendant. Id.

## B. DEFENDANTS COUNSEL SHOULD BE SANCTIONED PURSUANT TO 28 U.S.C. §1197 FOR INTERPOSING FRIVOLOUS CLAIMS AT THE ELEVENTH HOUR.

Counsel for Defendants should be sanctioned for their vexatious and
unreasonable multiplication and expansion of these and other proceedings.  *See*
28 U.S.C. §1927.  §1927 provides, in pertinent part, as follows:

> Any attorney or other person admitted to conduct cases in any court of
> the United States or any Territory thereof who so ***multiplies the***
> ***proceedings*** in any case ***unreasonably and vexatiously*** may be
> required by the court to satisfy personally the excess costs, expenses,
> and attorneys' fees reasonably incurred because of such conduct.

The Sixth Circuit has held that §1927, "authorizes a court to assess fees against an
attorney for '*unreasonable and vexatious' multiplication of litigation despite the*
*absence of any conscious impropriety,*" i.e. regardless of intent or fault on the part
of counsel. *Jones v. Continental Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986). The
Sixth Circuit has further held that the appropriate inquiry under § 1927 does not
require bad faith; instead, the appropriate inquiry is whether counsel  multiplied the
proceedings unreasonably and vexatiously. *See Jones,* 789 F.2d at 1230. An
affirmative answer to that question does not require a finding of recklessness,

subjective bad faith or conscious impropriety; instead, an attorney does not have carte blanche to burden the federal courts by pursuing claims that he should know are frivolous.  *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2006) (*quoting Haynie v. Ross Gear Div. of TRW, Inc.*, 799 F.2d 237, 243 (6th Cir. 1986) (*internal citations omitted*)). Rather, an attorney can be found to have unreasonably and vexatiously multiplied the litigation, and an assessment of fees against that attorney is proper, where:

> [A]n attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims.

*Trustees of Laborers, Local 310 Pension Fund v. Able Contracting Group, Inc.*, 2007 WL 184748, at *3 (N.D. Ohio Jan. 19, 2007) (quoting *Jones*, 789 F.2d at 1230).

The Sixth Circuit subsequently held that §1927 sanctions are appropriate where, "[A]n attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by the member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Shepard v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2003) (internal quotation marks omitted). The standard for imposing sanctions under § 1927, however, continues to be the objective standard announced in *Jones. Ridder v. City of Springfield*, 109 F.3d 288, 298 (6th Cir. 1997) ("[a]n attorney is liable under § 1927

19

solely for excessive costs resulting from the violative conduct."); *see also Bar's Prod., Inc. v. Bars Prod. Int'l, Ltd.*, Case No. 10-14321, 2014 WL 12689936, at *5 (E.D. Mich. Sept. 19, 2014), *report and recommendation adopted sub nom*; *Bar's Prod., Inc. v. Bar's Prod. Int'l, Ltd*., Case No. 10-14321, 2015 WL 5693661 (E.D. Mich. Sept. 29, 2015).

The facts, here, are simply not subject to good faith dispute:

1. Katebian was a permanent resident and a citizen of California for purposes of Diversity of Citizenship as of the Filing Date;

2. Defendant Skymark Properties II, LLC is and was a Michigan limited liability company and was a citizen of Michigan as of the Filing Date (Complaint, ¶7);

3. Defendant Skymark Properties III, LLC is and was a Michigan limited liability company and was a citizen of Michigan as of the Filing Date (Complaint, ¶8);

4. Defendant Skymark Properties SPE, LLC is and was a Michigan limited liability company and was a citizen of Michigan as of the Filing Date. (Complaint, ¶10 *sic*).

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court order that Plaintiff has satisfied his burden under the Court's Order to Show Cause [Docket No. 105] and deny Defendants' Motion to Dismiss [Docket No. 106] in its entirety and award Plaintiff his costs, expenses and such other or different relief the Court deems just and equitable.

Respectfully Submitted,
**PLUNKETT COONEY**
/s/*Sean M. Walsh*
Sean M. Walsh (P48724)
Attorneys for Plaintiff
38505 Woodward Ave., Suite 100
Bloomfield Hills, MI 48304
February 21, 2021        (248) 901-4000 (Office)/swalsh@plunkettcooney.com

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2021, I electronically filed the foregoing with the Clerk of the court using the ECF system, which will send notification of such filing to each attorney of record.

PLUNKETT COONEY
By: /s/*Sean M. Walsh*
SEAN M. WALSH (P48724)
Attorneys for Plaintiff
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI  48304
(248) 901-4000
swalsh@plunkettcooney.com

Open.27261.83617.25862420-1

22