UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Morteza Katebian,

      Plaintiff,

v.                                                                              Case No. 18-13379

Arash Missaghi, *et al.,*                                    Sean F. Cox
                                                                            United States District Court Judge

      Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiff Morteza Katebian filed this action against several Defendants on October 29,

2018, asserting that this Court has diversity jurisdiction over this case.  This has been a very

contentious case.  Discovery has been completed and the case did not resolve during the

dispositive-motion phase of the case.  During a status conference with the Court to discuss the

status of the joint final pretrial order, Defendants advised the Court they recently discovered that

this Court lacks diversity jurisdiction over this action.  Thereafter, the Court issued a Show

Cause Order and Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.

After that motion was briefed, Defendants filed a Motion to Strike, asking the Court to strike

Plaintiff's response to their motion.  The Court concludes that oral argument is not necessary and

shall rule based upon the briefs.  For the reasons set forth below, the Court shall deny

Defendants' Motion to Strike and shall grant Defendants' Motion to Dismiss because Plaintiff

has failed to meet his burden of establishing that diversity jurisdiction exists in this case.

## BACKGROUND

Acting through counsel, on October 29, 2018, Plaintiff Morteza Katebian filed this action against the following defendants: 1) Arash Missaghi; 2) Laila Alizadeh, 3) Troy Wilson, 4) Skymark Properties SPE, LLC; 5) Skymark Properties II, LLC; 6) Skymark Properties III, LLC; 7) Skymark Properties Corporation; and 8) Liberty & York Corporation.

Plaintiff filed the action in federal court based upon diversity jurisdiction. (Complaint, ECF No. 1, at ¶ 10) (alleging that "[this Court has subject matter jurisdiction over this dispute under 29 U.S.C. 1332 as there is complete diversity between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.")

Plaintiff's complaint alleges that Plaintiff Katebian "*resides* in, and is a permanent *resident* of, the State of California." (*Id.* at ¶ 1) (emphasis added). Plaintiff's Complaint alleges that all of the Defendants are citizens of Canada. Plaintiff alleges that the three individual Defendants (Missaghi, Alizadeh, and Wilson) are citizens of Canada. (Complaint at ¶¶ 2-4). Plaintiff alleges the citizenship of the remaining Defendants as follows:

5.     Liberty & York is a Michigan corporation with its principal place of business located in Toronto, Canada.
6.     Skymark Corporation is a Michigan corporation with its principal place of business located in Toronto, Canada.
7.     Skymark II is a Michigan limited liability company the sole member of which is Skymark Corporation. For the purpose of diversity jurisdiction, Skymark II is a citizen of Michigan and Toronto.
8.     Skymark III is a Michigan limited liability company the sole member of which is Skymark Corporation. For the purpose of diversity jurisdiction, Skymark III is a citizen of Michigan and Toronto.
10.[1]     Skymark SPE is a Delaware limited liability company the sole member of which is Skymark Corporation. For the purpose of diversity jurisdiction, Skymark SPE is a citizen of Michigan and Toronto.

---

[1]The Complaint does not have a paragraph numbered 9.

(Complaint at ¶¶ 5-10).

The case proceeded through discovery and dispositive motion practice but the case did not resolve. The matter was scheduled for a joint final pretrial conference. During the course of preparing a Joint Final Pretrial Order, Defendants asserted, for the first time, that this Court lacks subject matter jurisdiction over this action.

Thereafter, this Court issued an "Order To Show Cause Why Case Should Not Be Dismissed For Lack Of Subject Matter Jurisdiction" wherein the Court ordered as follows:

> The Court hereby ORDERS that, no later than February 5, 2021, Defendants shall file a brief of no more than twenty (20) pages wherein they shall explain why they believe that diversity jurisdiction does not exist in this case. Defendants shall also direct the Court to on-point legal authority that supports their position.
> The Court further ORDERS that no later than February 19, 2021, Plaintiff shall file a brief of no more than twenty (20) pages, wherein Plaintiff shall respond to Defendants' arguments and SHOW CAUSE why this action should not be dismissed for lack of subject matter jurisdiction.
> IT IS SO ORDERED.

(ECF No. 105).

Defendants filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction on January 26, 2021, rather than a brief, and they filed it earlier than the deadline set forth in this Court's Show Cause Order. (ECF No. 106).

Plaintiff filed his response to that motion on February 19, 2021, and filed "corrected" and amended filings on February 21st, and 22nd. (ECF Nos. 108, 109, 110).

On March 4, 2021, Defendants filed a Motion to Strike (ECF No. 111) wherein they ask this Court to strike Plaintiff's response brief and impose sanctions. Plaintiff filed a brief opposing that motion.

## ANALYSIS

### I.  Defendants' Motion To Strike

On March 4, 2021, Defendants filed a "Motion To Strike Plaintiffs' Untimely And Overlong Response To Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction, Response To Plaintiff's Motion For Sanctions Under 28 U.S.C. 1927, And For Other Relief." (ECF No. 111).

#### A.  Timeliness

This Court's Show Cause Order directed Defendants to file a brief of no more than 20 pages "wherein they shall explain why they believe that diversity jurisdiction does not exist in this case.  Defendants shall also direct the Court to on-point legal authority that supports their position."  (Show Cause Order, *supra*).  That Order further directed Plaintiff to file a brief responding to those arguments no later than February 19, 2021.

Rather than file a *brief* addressing the jurisdictional issue, Defendants filed a *Motion to Dismiss*, and filed it before the Court's deadline.  Plaintiff then filed a response brief on February 19, 2021, and a corrected version of a few days later.

Defendants assert that Plaintiff's briefs should be stricken as untimely, because they were not filed within 21 days of Defendants' Motion to Dismiss.

The way these proceedings unfolded, Plaintiff's brief filed on February 19, 2021, is not untimely as it was first filed on the date ordered by the Court.

#### B.  Length Of Briefs

This Court's Show Cause Order provided that Plaintiff's response brief was to be no longer than 20 pages long.

Defendants' Motion to Strike asks the Court to strike Plaintiff's "overlong" response brief because it was "over 20 pages long." (Defs.' Br. at 2).

In response to this argument, Plaintiff asserts that "[t]he text of Plaintiff's Response [Docket No. 108] and his Corrected Response [Docket No. 109] is precisely 20 pages," and it is only the "text portion of a brief" that should be measured to determine the length of the brief. (Pl.'s Br. at 6). Plaintiff suggests that Defendants should be sanctioned under § 1927 for asserting that his brief exceeded 20 pages. (*Id*. at n.4).

Plaintiff filed two response briefs. First, Plaintiff filed ECF No. 108, which was exactly 20 pages in length (not including the certificate of service on page 21). Second, Plaintiff filed ECF No. 109, which was 21 pages long. Contrary to Plaintiff's assertion, that 21st page included text. Thus, it did technically exceed the Court's page limitation of 20 pages. But it only exceeded it by a single paragraph, which hardly warrants the extreme sanction of striking it.

### C.    Not Addressing The Issue Raised

Defendants also suggest that Plaintiff's brief should be stricken because, "as required in the Show Cause Order, [Plaintiff's brief] does not actually address the legal argument in Defendant's motion." (Defs.' Br. at 2). While that is true, that does not provide a basis for striking the brief from the record.

### D.    Plaintiff's Motion Under 28 U.S.C. Section 1927

Defendants also ask the Court to deny Plaintiff's "motion under 28 U.S.C. § 1927" and, in turn, assess fees against Plaintiff's Counsel. (Defs.' Br. at 6). This request is denied, as Plaintiff did not file a motion seeking sanctions under § 1927 and, therefore, there is no pending

motion for sanctions for the Court to deny.[2]

## II.      Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction

Defendants' filed their Motion to Dismiss for Lack of Subject Matter Jurisdiction on

January 26, 2021, and the motion has been fully briefed.

### A.      Standard Of Review

Defendants' Motion to Dismiss is brought under Fed. R. Civ. P. 12(h)(3), which provides

that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must

dismiss the action."

Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of*

*Am.*, 511 U.S. 375, 377 (1994).  It is well-established that subject matter jurisdiction can never

be waived.  Thus, the "objection that a federal court lacks subject-matter jurisdiction," under

Rule 12(h)(3), "may be raised by a party, or by a court on its own initiative, at any stage in the

litigation, even after trial and entry of judgment."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506,

126 S.Ct. 1235, 1240, 163 L.Ed.2d 1097 (2006); *see also Prime Rate Premium Finance Corp.,*

*Inc. v. Larson*, 930 F.3d 759, 764-65 (6th Cir. 2019) ("For some 200 years it has been the rule

that – no matter the time and resources spent – an appellate court must wipe out everything that

has occurred if the lower court lacked jurisdiction.").

There is a presumption against federal jurisdiction, *Kokkonen, supra*, at 377, and it is the

*plaintiff's burden* to establish that subject matter jurisdiction exists.  *Hertz Corp. v. Friend*, 559

U.S. 77, 96 (2010).

---

[2]Rather, Plaintiff's Counsel improperly made a request for relief within a response to a
motion.  Per Fed. R. Civ. P. 7(b)(1), a "request for a court order must be made by motion."

## C.    Defendant's Argument

Defendants' Motion to Dismiss asks this Court to dismiss this case for lack of subject-matter jurisdiction.  Defendants argue that there is no diversity jurisdiction over this case because it involves a foreign plaintiff as both a plaintiff and a defendant.  Defendants' motion argues:

> Diversity jurisdiction does not exist between a foreign plaintiff and a foreign defendant. This rule has its basis in the 1806 decision in *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435 (1806). The complete diversity requirement destroys diversity jurisdiction in any federal suit involving a subject of a foreign state on one side and subject of a foreign state on the other. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 580 fn.2 (1999) ("[t]he foreign citizenship of defendant Ruhrgas, a German corporation, and plaintiff Norge, a Norwegian corporation, rendered diversity incomplete.") ; *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, Case 2:18-cv-13379-SFC-DRG   ECF No. 106, PageID.3962   Filed 01/26/21   Page 6 of 10 2569 (2004) (in case involving both state and foreign citizens as plaintiffs and a  foreign citizen as defendant, no diversity because "aliens were on both sides of the case").
>
> The Sixth Circuit applied the foreign vs. foreign party rule in *Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co.*, 509 F.3d 271, 272 (6th Cir. 2007). The Sixth Circuit explained the rationale behind the rule in *U.S. Motors v. Gen. Motors Europe*, 551 F.3d 420, 423, cert. den, 130 S.Ct.1524 (6th Cir. 2008), affirming (Ret.) Chief Judge Gerald Rosen's opinion, 519 F. Supp. 2d 671 (E.D. Mich. 2007)  and citing the unanimous view of other Courts of Appeal on this issue.
>
> Subsequent to *U.S. Motors*, the Sixth Circuit applied the rule in the same fact situation  in *TC Power Ltd. v. Guardian Indus. Corp.*, 568 F. App'x 376, 379 (6th Cir. 2014) and *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prod. Liab. Litig.*, 953 F.3d 890, 895 (6th Cir. 2020). *See also Vreba-Hoff Dairy Dev., LLC v. Van Zelst*, No. 3:18CV880, 2018 WL 5435415, at *1 (N.D. Ohio Oct. 29, 2018) (same).  Since *U.S. Motors*, the Fifth Circuit followed the rule in *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 538 (5th Cir. 2014), and the Tenth Circuit in *Air Century SA v. Atlantique Air Assistance,* 447 F. App'x 879, 881 (10th Cir. 2011).
>
> Plaintiff is Iranian/Canadian and at least three Defendants are Canadian. The presence of aliens on both sides of the litigation bars his claim to diversity  jurisdiction.

(Defs.' Br., ECF No. 106, at PageID.3962-63).

### C.      Plaintiff's Response

In response to Defendants' Motion to Dismiss, Plaintiff repeatedly makes references

about Defendants raising the subject-matter jurisdiction issue for the first time at the pretrial

conference phase, at the "eleventh-hour," etc. – suggesting the issue was not timely raised or has

been waived.  Such arguments do not aid Plaintiff because subject-matter jurisdiction can be

challenged at any time and can never be waived.  *See, e.g., Insurance Corp. of Ireland v.*

*Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492

(1982) ("Subject-matter jurisdiction, then, is an Art. III as well as statutory requirement . . . no

action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the

consent of the parties is irrelevant . . . and a party does not waive the requirement by failing to

challenge jurisdiction early in the proceedings.  Similarly, a court, including an appellate court,

will raise lack of subject-matter jurisdiction on its own motion.").

Plaintiff also asserts that "these Defendants admit in their Answer that Plaintiff is a

*citizen* of the State of California for purposes of diversity of citizenship.  See Exhibit 22 at ¶¶ 1

& 7-11)."  (ECF No. 108 at PageID.4277) (emphasis in Pl.'s Br.).  This argument also lacks

merit.

Exhibit 22 to Plaintiff's response consists of portions of Plaintiff's Complaint in this

action, and corresponding portions of Defendant's Answer to it.  Notably, paragraph 1 of

Plaintiff's complaint *does not* allege that Plaintiff is a "citizen" of California for purposes of

diversity jurisdiction.  Rather, it alleges that "Katebian *resides in*, and is a permanent *resident of*,

the State of California."  (Compl. at ¶ 1) (emphasis added).  That paragraph does not include

allegations as to Katebian's "citizenship."  It only makes allegations regarding residence and that

is insufficient.[3]

As the Sixth Circuit made clear in *Prime Rate Premium Fin. Corp. v. Larson*, 930 F.3d 759, 765 (6th Cir. 2019) residence and citizenship are "wholly different things," stating a "'mere averment of residence' does not aver citizenship, *id*, so '[w]hen the parties allege residence but not citizenship, the court must dismiss the suit[.]'" Indeed, after that decision was issued, this Court has made it a practice to issue a jurisdictional-show-cause order when mere allegations of "residence" are made in a complaint asserting diversity jurisdiction. This case, however, commenced prior to that decision.

Moreover, Defendant's Answer did not "admit" that the allegations made in paragraph 1 (pertaining to Katebian's residence) are true in any event. To the contrary, as to paragraph 1 of the Complaint, Defendants' Answer states that "Defendants lack information or knowledge sufficient to form a belief as to the allegations contained in paragraph 1, and therefore leaves Plaintiff to its proofs." (Defs.' Answer at ¶ 1).

Plaintiff also construes Defendants' Motion to Dismiss as asserting: 1) that diversity jurisdiction does not exist in this case based upon events that occurred *after* the date the complaint in this action was filed (*see* Pl.'s Br. at PageID.4285); and 2) that all of the Defendants are only deemed "foreign citizens, i.e., not citizens of the United States." (Pl.'s Br. at PageID.4274). But that is not what Defendants' motion asserts.

Defendants' motion asserts that Plaintiff cannot establish that diversity jurisdiction existed when Plaintiff (an admitted Canadian citizen) filed his complaint in this action against

---

[3]And paragraphs 7-11 of the Complaint and corresponding answer do not address Katebian.

Defendants (who include Canadian citizens) because there are foreign citizens as both plaintiff and defendant. (Defs.' Br. at 1-2, discussing the "foreign vs. foreign party rule" and asserting that the "complete diversity requirement destroys diversity jurisdiction in any federal suit involving a subject of a foreign state on one side and subject of a foreign state on the other." (*Id*.)).

Despite having now filed three separate briefs (ECF Nos. 108, 109. & 112), Plaintiff has not responded to that argument or addressed the cases relied on by Defendants. In ignoring those arguments, and the cases cited, Plaintiff also fails to apprise the Court as to whether Plaintiff believes that diversity jurisdiction in this case exists under §1332(a)(1), (2), (3), or (4).

Instead, Plaintiff makes the above arguments, and also makes an entirely misplaced argument that the doctrine of judicial estoppel bars Defendants from taking the position that Katebian is not a citizen of California for purposes of diversity jurisdiction.

"The doctrine of judicial estoppel forbids a party 'from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.'" *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1217 (6th Cir. 1990) (quoting *Reynolds v. Commissioner of Internal Revenue*, 861 F.2d 469, 472-73 (6th Cir. 1988)). "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Id*. (citation omitted). "In order to invoke judicial estoppel, a party must show that the opponent took a contrary position under oath

in a prior proceeding and that the prior position was accepted by the court." *Id.*[4]

Here, Plaintiff has not shown that judicial estoppel applies because Plaintiff has not

identified: 1) a prior court proceeding; 2) during which Defendants have taken the position that

Katebian is a California citizen for purposes of diversity jurisdiction; and 3) that position has

been accepted by the court.

Rather, Plaintiff refers to a case that was filed after this case was filed, that is also

assigned to this Court (Case No. 20-12372). In that case, RICO claims are being asserted against

Katebian based on *federal-question jurisdiction* – the case was not filed based upon diversity

jurisdiction.  Thus, that case is a subsequent case as opposed to a prior proceeding, and in any

event the Court has not made any ruling as to Katebian's citizenship in that case.[5]  Thus, it did

not accept any position as to Katebian's citizenship.

Although entirely irrelevant to the issue before the Court, Plaintiff's Counsel also

speculates as to why Defendants are contesting subject matter jurisdiction at this juncture.  (Pl.'s

Br., ECF No. 109, at PageID.4316-17).  Plaintiff appears to make this argument in order to

present nasty texts or emails between the parties to the Court.  (*Id.*).  This has nothing to do with

whether or not this Court has subject-matter jurisdiction over this case.

_____

[4]For example, suppose that a man contested that he was the father of John Smith in order
to avoid paying child support and the court ruled that no support was owed because he is not the
father of the child.  Judicial estoppel would bar that man from later taking a contrary position in
a subsequent case, such as a probate case wherein that man seeks to inherit from John Smith as
his father.

[5]Plaintiff also directs the Court to a number of documents that Plaintiff states were
provided to lenders and others, in order to obtain financing.  Those documents do not support the
application of the doctrine of judicial estoppel.

#### D.     Analysis

Defendant's Motion to Dismiss asserts that this action must be dismissed because, under 28 U.S.C. § 1332, there is no diversity jurisdiction between a foreign plaintiff and a foreign defendant.  The parties agree that the relevant inquiry is whether diversity jurisdiction existed on the date this action was filed (i.e., October 29, 2018).

28 U.S.C. § 1332 is titled, "Diversity of citizenship; amount in controversy," and governs diversity jurisdiction in federal court.  Section 1332(a) provides that:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1) citizens of different states;
>
> (2) citizens of a State and citizens or subjects of a foreign state, except that the district court shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;
>
> (3) citizens of different States and which citizens or subjects of a foreign state are additional parties; and
>
> (4) a foreign state . . . as plaintiff and citizens of a State or of different States.

28 U.S.C. § 1332(a).

Here, Plaintiff's Complaint does not specify under which subsection of § 1332(a) this action was brought.

As explained in Federal Practice and Procedure, "an alien may sue a citizen of a state of the United States in a federal district court."  14 A Fed. Prac. & Proc. Juris. § 3661 (4th ed.).  "If both the plaintiff and the defendant are aliens, however, it is equally well-settled" that "Section 1332 does not apply" because "there is no alienage jurisdiction."  *Id.*

"Questions of alienage jurisdiction become more complicated, however, in multiparty actions. Traditionally, aliens on both sides of a controversy were held to have destroyed diversity even if fully diverse domestic citizens also were aligned as opposing parties." *Id*. "Many courts continued to maintain this position," while other courts, "strictly applying the language of Section 1332(a)(3), have held that the presence of aliens in the action as additional parties, even if on both side of the controversy, does not destroy diversity jurisdiction, provided that there are diverse domestic citizens on both sides of the case." *Id.*

The Sixth Circuit has explained that "[t]wo provisions in 28 U.S.C. § 1332(a)" may give district courts jurisdiction over civil actions that include foreign citizens and that seek more than $75,000." *In re DePuy Orthopaedics, Inc. v. ASR hip Implant Prods. Liab. Litig*. 953 F.3d 890, 894 (6th Cir. 2020).

### 1.    Section 1332(a)(2)

"The first, § 1332(a)(2), grants jurisdiction over a civil action between 'citizens of a State and citizens or subjects of a foreign state[.]' So if a Spanish citizen sued an Ohio citizen for more than $75,000, jurisdiction would exist under § 1332(a)(2)." *Id.* (citing 14A Charles Alan Wright et al., Federal Practice and Procedure § 3661m at 5 (2013) and U.S. Const. art. III, § 2, cl. 1).

Sixth Circuit authority also reflects that diversity jurisdiction does exist under § 1332(a)(2) if there are foreign citizens (i.e., aliens) on both sides of the controversy. *See, e.g., Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co. Ltd.*, 509 F.3d 271, 272 (6th Cir. 2007). In *Peninsula,* the Sixth Circuit held that diversity jurisdiction did not exist. It explained that "[b]ecause there are alien corporations on both sides of the controversy, this case lacks the complete diversity required for a federal court to exercise diversity jurisdiction under §

1332(a)(2)." *Id*. at 272 (citations omitted).  It further explained:

> Contrary to the defendants' argument, it makes no difference whether the plaintiff
> Grand Cayman Islands corporation has it principal place of business in the United
> States.  It is well established that, under § 1332(a)(2), 'even if a corporation
> organized under the laws of a foreign nation maintains its principal place of
> business in a State, and is considered a citizens of that State, diversity is
> nonetheless defeated if another alien party is present on the other side of the
> litigation."

*Id.* at 273 (citations omitted).

Here, under Sixth Circuit authority, diversity jurisdiction does not exist under §

1332(a)(2) because foreign citizens are on both sides of the controversy (Plaintiff Katebian being

a Canadian citizen and the three individual Defendants also being Canadian citizens).

### 2.    Section 1332(a)(3)

The second provision in § 1332(a) that may apply when a foreign citizen is a party is

subsection (a)(3).  Section 1332(a)(3) "grants jurisdiction over a civil action between 'citizens of

different States" even when "citizens or subjects or a foreign state are additional parties[.]' So if

an Ohio citizen sued both a Michigan citizen and a Spanish citizen for more than $75,000,

jurisdiction would exist under § 1332(a)(3)." *In re DePuy Orthopaedics, Inc.,* 953 F.3d at 894.

The Sixth Circuit went on to note that "if citizens of different states are on both sides of a

dispute, *most courts* hold that § 1332(a)(3) even permits foreign citizens to join as additional

parties on both sides." *Id*. (citing *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244,

245 (7th Cir. 2003) (emphasis added).  So in the above scenario, diversity jurisdiction would still

likely exist if an Ohio citizen and French citizen sued both Michigan citizens and a Spanish

citizen, providing the amount in controversy requirement was met.

The Sixth Circuit answered the question of "[w]hat happens" if "foreign citizens are on

Case 2:18-cv-13379-SFC-DRG   ECF No. 116, PageID.4589   Filed 06/10/21   Page 15 of 17

both sides of a dispute but a state citizen is on only one side (say, a Spanish plaintiffs sues

defendants from Ohio and the United Kingdom)" in *In re DePuy Orthopaedics, Inc.* It

concluded that "fact pattern does not fit § 1332(a)(3) because citizens of different states do not

fall on both sides (as in the example involving an Ohio citizen suing a Michigan citizen and a

Spanish citizen)." *Id.*

In other words, most courts hold that diversity jurisdiction exists under 1332(a)(3), even

if there are foreign citizens on both sides of the controversy – as long as there citizens of

different states on both sides as well. But if a state citizen is only on one side of the controversy,

there is no diversity jurisdiction.

Here, the defendant side of the controversy includes both Michigan citizens (e.g., Liberty

& York, a Michigan corporation) and foreign citizens (i.e., the individual Defendants, all

Canadian citizens). In order for there to be diversity jurisdiction under § 1332(a)(3), the same

must be true of the Plaintiff's side. Katebian is the only Plaintiff and he is a Canadian citizen.

Thus, the only way there can be diversity is if, under these circumstances, Katebian is also

deemed to be a citizen of a State other than Michigan.

Plaintiff's briefs, however, do not address any of this and Plaintiff does not allege or

assert that diversity jurisdiction exists here under § 1332(a)(3).[6] Plaintiff does, however, assert

that on the filing date of this case Katebian as "a permanent resident of the United States,

domiciled in the State of California, because Plaintiff holds a U.S. Green Card and a U.S. entry

permit, and therefore, is considered to be a permanent resident of the United States and a citizen

of whatever State he was domiciled in as of the Filing Date." (Pl.'s Br. at 2). However, Plaintiff

---

[6]To the contrary, Plaintiff relies on § 1332(a)(2). (*See* ECF No. 112 at PageID.4515).

15

does not direct the Court to *legal authority* to support that assertion.

So the issue is whether Katebian, a Canadian citizen but also a permanent resident alien of the United States, is deemed a citizen of a State for diversity purposes under § 1332(a)(3), in a 2018 case wherein he is suing other Canadian citizens.  The authority presented to this Court appears to reflect that the answer to that question is no.  *See e,g., One World, LLC v. Onoufriadis*, 2021 WL 184400 at * 13 (S.D. N.Y. Jan. 1, 19, 2021) ("A lawful permanent resident domiciled in a state is not a citizen of that state – he is an alien for purposes of diversity jurisdiction."); *Nouinou v. Smith,* 2021 WL 1199431 at *3 (S.D. N.Y. 2021) ("A lawful permanent resident domiciled in a state remains an alien for purposes of diversity jurisdiction."); *Tagger v. Strauss Group, Ltd.*, 951 F.3d 124, 126-27 (2d Cir. 2020); *see also* 14A Fed. Prac. & Proc. Juris. § 3661 (4th ed.) (Discussing the 2011 amendment to § 1332 that eliminated the "deemed a citizen of" language from the statute).[7]

## CONCLUSION & ORDER

Based on the facially-deficient allegations regarding Plaintiff's mere residence in his Complaint,  Plaintiff's response brief and the authority cited in it, this Court concludes that Plaintiff has failed to meet his burden of showing that this Court has diversity jurisdiction over this case.  This Court concludes that diversity jurisdiction does not exist and, therefore, this Court lacks subject matter jurisdiction.

Accordingly, the Court ORDERS that Defendants' Motion to Dismiss is GRANTED and

---

[7]"[B]etween 1988 and 2011, Section 1332 of the Judicial Code specified that 'an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.'" (*Id*.).  In 2011, that "deemed a citizen of" language was removed.

this action is DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.


IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge


Dated:  June 10, 2021